# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**BYRON HOLTON, JR.,**

    **Petitioner,**

    **v.**

**STATE OF OHIO,**

    **Respondent.**

    **CASE NO. 2:18-CV-01489**
    **JUDGE GEORGE C. SMITH**
    **Chief Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, and the exhibits of the parties. For the reasons that follow, the Undersigned **RECOMMENDS** that this action be **DISMISSED**.

## I. Facts and Procedural History

The Ohio Third District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} On September 14, 2016, Holton was indicted on one count of Corrupting Another with Drugs in violation of R.C. 2925.02(A)(4), a felony of the second degree, and one count of Trafficking in Cocaine in violation of R.C. 2925.03(A)(1), a felony of the fifth degree. Holton pled not guilty to the charges and the case proceeded to a jury trial, which was held December 6–7, 2016.

> {¶ 3} The testimony at trial indicated that on July 26, 2016, officers affiliated with the Logan County Joint Drug Task Force were using a confidential informant ("CI") named Bradley Hudson to attempt to make a controlled drug buy from a man named Meredith Story.

> {¶ 4} After officers outfitted the CI with audio recording and transmitting equipment, and provided the CI with $40 to purchase drugs, the CI went to the residence of Kenneth Williams, aka "Ken Buck," where Story was staying. The CI indicated in his testimony that Story was a middleman for Holton, who sold quality drugs.

{¶ 5} When the CI went to Ken Buck's residence to find Story, Story was not home. Ken Buck indicated that he may be able to set up a deal with a separate dealer so the CI went with Ken Buck to a nearby area. The other drug dealer never came and the alternative transaction was not completed.

{¶ 6} By the time Ken Buck had failed to set up an alternate transaction, Story had returned to town. The CI spoke with Story, who then called Holton. Holton was known on the street as "BJ." Story set up an $80 purchase that the CI understood to be from Holton, which would involve $40 from the CI and $40 from Story. The purchase was supposed to occur at a Marathon station so Story, Ken Buck, and the CI drove to the Marathon.

{¶ 7} The CI indicated that they waited in a car at the Marathon station until Holton approached the Marathon station on foot along with two "kids." The CI testified that Holton and the "kids" went into the Marathon station and then one of the "kids" walked out and came up to the window at the back of the car to speak with Story. The CI testified that the kid said something like "80, right?" (Tr. at 193). The CI indicated that they felt "kind of uneasy about buying crack from kids," but the sale was ultimately completed. (*Id.*) The CI indicated that money was then exchanged for the drugs and the juvenile walked off. The CI, Ken Buck, and Story then left the Marathon station.

{¶ 8} The CI testified that they went back to Ken Buck and Story's residence where the drugs were divided and the CI left. Afterward, officers recovered a substance suspected to be crack-cocaine from the CI, which was later tested and found to contain cocaine.

{¶ 9} Officers recorded the audio from the operation and also conducted visual surveillance at the Marathon, taking pictures of Holton and the two juveniles, later identified as Tyrese Leeper and Roland Ratliff, as they came to, and left from, the scene with Holton. Officers interviewed Leeper, who admitted to selling drugs on that one occasion on behalf of Holton. Leeper indicated that he agreed to sell for Holton in exchange for money to buy food.

{¶ 10} Leeper and Ratliff both testified at trial along with the CI and officers involved in the investigation. Leeper testified that he was 13 years old at the time of the July 26, 2016 transaction and that he was 14 at the time of trial. Leeper also testified that Holton was in his mid–20s.

{¶ 11} As to the incident in question, Leeper testified that on the day of the sale Holton received a phone call while they were playing basketball asking if Holton had some "dope" to sell. Leeper indicated that "dope" in this instance was crack-cocaine. (Tr. at 120–121). Leeper testified that Holton asked Leeper to sell it for him and that Holton indicated he would give Leeper some money for doing so. Leeper testified that he had not eaten in multiple days and needed money for food. Leeper testified that he walked to the Marathon station with Holton and Ratliff, and

that Holton handed Leeper the crack-cocaine on the way to the store. Leeper testified that they all went into the store, then Leeper came out and approached the vehicle, exchanging the drugs for the money.

{¶ 12} Roland Ratliff testified that he was 15 years old and that he was Leeper's cousin. Ratliff testified that both he and Leeper had "run drugs" for Holton in the past. Ratliff testified that he had never sold drugs for anyone besides Holton. Ratliff largely corroborated the events as testified to by the CI and Leeper, with the notable exception that Ratliff indicated drug sales for Ratliff and Leeper on behalf of Holton had been ongoing rather than a one-time event.

{¶ 13} The State entered numerous exhibits into evidence, which included photographs of Holton, Ratliff and Leeper coming to, and going from, the Marathon station. The State introduced brief recorded surveillance videos as well as the audio recording of a debrief session with the CI. In addition, the State introduced the audio from two calls that Holton made from jail.

{¶ 14} At the conclusion of the evidence, the State requested that the jury be instructed on Complicity to Trafficking in Cocaine and that request was granted. The jury found Holton guilty of Corrupting Another with Drugs and guilty of Complicity to Trafficking in Cocaine, but not guilty of Trafficking in Cocaine.

{¶ 15} Holton was then sentenced to serve five years in prison on the Corrupting Another with Drugs charge, 1 year in prison on the Complicity to Trafficking in Cocaine charge, and 1 year in prison for committing a new felony while on post-release control. The sentences were ordered to be served consecutive to each other for an aggregate 7–year prison term. A judgment entry memorializing Holton's sentence was filed on December 19, 2016. It is from this judgment that Holton appeals, asserting the following assignments of error for our review.

Assignment of Error No. 1

The Trial Court committed plain error when it permitted State's Exhibit 26, the audio tape of the debriefing session, to be played for the jury and subsequently admitted into evidence.

Assignment of Error No. 2

The Trial Court committed plain error when it questioned Detective Joseph as to Appellant's age.

Assignment of Error No. 3

The State failed to prove Appellant's guilt beyond a reasonable doubt as to both counts in the indictment.

Assignment of Error No. 4

The trial court committed plain error when it failed to instruct the jury concerning the manner in which it should weigh the testimony of an accomplice of an expert.

Assignment of Error No. 5

The omissions of trial counsel deprived appellant of his right to effective assistance of counsel.

Assignment of Error No. 6

The combined effect of all errors identified herein deprived appellant of due process and a fair trial.

*State v. Holton,* 3rd Dist. No. 8-17-02, 2017 WL 3129395, at *1-2 (Ohio Ct. App. July 24, 2017).

On July 24, 2017, the appellate court affirmed the judgment of the trial court. *Id.* On May 9, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Holton*, 152 Ohio St.3d 1462 (Ohio 2018).

On November 28, 2019, Petitioner filed this *pro se* habeas corpus Petition. He asserts the following claims, repeated here verbatim:

1. Is a prior consist[e]nt statement of a witness called by the prosecution admissible when the defendant does not raise an[] issue of fabrication concerning the testimony of that witness.

2. Does a trial court err when it adduces testimony concerning a crucial element of the offense because the prosecution failed to present testimony on that issue.

3. Are a jury's guilty verdicts proper when the weight of the evidence does not support, by proof beyond a reasonable doubt one or more [of] the elements of each of the offenses charged in the indictment.

4. When a defendant is charged as an accomplice and the individual that prosecution committed the offense [sic] testifies against a defendant is the trial court required to give jury instruction.

5. Is a defendant deprived of effective assistance of counsel when counsel fails to object to [] inadmissible evidence and testimony[,] improper questioning by the court[,] and inform jury instructions and the defendant is prejudiced by counsel['s] failure to object.

6. Can [] court grant relief based upon the combined prejudice. . . from two or more errors even though the prejudice arising individually from those errors does not warrant relief.

It is the position of the Respondent that Petitioner's claims are procedurally defaulted or without merit.

## II. Claim One – "Prior consist[e]nt Statement"

This Court is unable to determine the nature of Petitioner's allegations in claim one. Even liberally construing Petitioner's pleadings, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (the allegations of a *pro se* complaint are to be held to less stringent standards than formal pleadings drafted by lawyers), the Court cannot decipher the nature of this claim or the underlying constitutional violation that he alleges. Further, Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts provides that the Petitioner must specify the nature of his grounds for relief and state the facts in support of each ground. Rule 2(c)'s requirements are "more demanding" than Federal Rule of Civil Procedure 8(a), which requires in "ordinary civil proceedings" that the complaint "provide 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Mayle v. Felix*, 545 U.S. 644, 655-56, (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) ); *see also McFarland v. Scott*, 512 U.S. 849, 860 (1994) (O'Connor, J., concurring in part) ("the habeas petition, unlike a complaint, must allege the factual underpinning of the petitioner's claims"). Notice pleading is insufficient in a petition seeking habeas relief because a petitioner's pleadings must "state facts that point to a real possibility of Constitutional error." *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977); *see also McClure v. Warden, London Corr. Inst.*, No. 1:16–CV–729, 2018 WL 1452253, at *4 (S.D. Ohio March 1, 2018) *Report and Recommendation adopted*, No. 1:16–CV–729, 2018 WL 1425957 (S.D. Ohio Mar. 22, 2018) (internal citations omitted). Dismissal under Habeas Rule 2(c) is

appropriate in cases where it is impossible to determine from the petitioner's pleadings the exact errors of fact or law raised for adjudication. *See Rice v. Warden*, No. 1:14-cv-732, 2015 WL 5299421, at *4 (S.D. Ohio Sept. 9, 2015) (dismissal under Rule 2(c) appropriate where pleadings contain unintelligible and conclusory allegations and statements) (citations omitted); *Accord v. Warden, Lebanon Corr. Inst.*, No. 2:12-cv-355, 2013 WL 228027, at *3 (S.D. Ohio Jan. 22, 2013) (while the court liberally construes a *pro se* prisoner's pleadings, it is not required to "conjure allegations" on the petitioner's behalf) (citations omitted). These are the circumstances here. The Court cannot determine the nature of Petitioner's claim. He has failed to allege any facts that would support a claim that he was convicted in violation of the Constitution or laws of the United States. Accordingly, the Magistrate Judge cannot determine what alleged errors of fact or law are at issue for adjudication. Thus, claim one is subject to dismissal on this basis alone.

To the extent that Petitioner appears to be raising an issue regarding the alleged violation of state law, this claim does not provide him a basis for relief. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Put simply, a federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). This is because a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial

of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

The Respondent presumes that Petitioner intends to assert in claim one the same claim that he did on direct appeal, in which he claimed that the trial court committed plain error in permitting the hearsay admission of an audio recording of a debriefing session between the confidential informant and Detectives Comstock and Joseph of the Joint Drug Task Force. (*Return of Writ*, ECF No. 8, PAGEID # 548-49); *see State v. Holton*, 2017 WL 3129395, at *3. Assuming that to be the case, such a claim would, in any event, be procedurally defaulted for the reasons discussed below, based both on Petitioner's failure to object, and his failure to raise the issue in the Ohio Supreme Court.

In short, and for all the foregoing reasons, claim one does not provide a basis for relief.

## III. Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam* ) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971) ). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the

state courts, "there is a procedural default for purposes of federal habeas."  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review."  *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so.  As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*).  First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.  Second, the court must determine whether the state courts actually enforced the state procedural sanction.

Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id.*

Liberally construing Petitioner's pleadings, the Court presumes that Petitioner asserts in claim two, as he did on direct appeal, that the trial court committed plain error when it questioned Detective Joseph about Petitioner's age. However, Petitioner has waived this claim by failing to object. Thus, the appellate court conducted a plain error review:

> Holton argues that the trial court committed plain error by asking Detective Joseph how old Holton was. Specifically, Holton argues that absent the trial court's questioning the record did not establish Holton's age in order to prove the Corrupting Another with Drugs charge, which requires a 2–year age difference between the defendant and the juvenile who is being corrupted.
>
> {¶ 23} Initially, we note that Evid. R. 611 grants the trial court the power to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."
>
> {¶ 24} "Evid. R. 614(B) empowers the court with the authority to interrogate any witness in an impartial manner. A court's questioning of a witness falls within the court's sole discretion." *State v. Gervin*, 3d Dist. Marion No. 9–15–52, 2016–Ohio–8399, ¶ 184, citing *State v. Prokos*, 91 Ohio App.3d 39, 44, 631 N.E.2d 684 (4th Dist.1993).
>
> {¶ 25} In this case, at the end of the testimony of Detective Joseph of the Logan County Sheriff's Office, the trial court asked Detective Joseph what Holton's date of birth was. The trial court indicated that it was unsure whether that information was in the record. At that time, defense counsel actually agreed to stipulate to Holton's age, which was 26 years old.

{¶ 26} Holton now argues that the trial court's question constituted plain error as the trial court was essentially acting as a prosecutor, asking a question specifically regarding an element of Corrupting Another with Drugs. Corrupting Another with Drugs as charged in this case required proof that Holton furnished a controlled substance to a juvenile who was at least two years younger than Holton. Holton claims that absent the trial court's question, and defense counsel's stipulation, the jury may have found that the evidence did not support the two-year age difference between Holton and Leeper. As Holton did not object to the trial court's question, and, in fact, stipulated to the answer, we review Holton's argument on appeal for plain error.

{¶ 27} At the outset of our analysis we note that a trial court is permitted to ask questions of witnesses and exercise control of the presentation of evidence. *See Gervin*, supra, at ¶¶ 181–195. However, even if we assumed that the trial court overreached by specifically clarifying Holton's age, we could not find plain error in this instance as Holton's age was referred to multiple times in the record, and Leeper's age as 13 at the time of the crime and 14 at the time of trial was clearly established.

{¶ 28} As to Holton's age specifically, Tyrese Leeper testified that years prior to the incident in this case he had asked Holton how old he was and Holton had said 23 at that time, so Leeper thought Holton was in his "mid 20s" at the time of trial when he was asked by the prosecutor. Leeper was familiar with Holton since he was his friend and Leeper's mother also braided Holton's hair.

{¶ 29} In addition to Leeper's testimony regarding Holton's age, Roland Ratliff testified that Holton was "grown" and that Holton was not in school anymore, establishing that Holton was likely over 18. (Tr. at 157). Furthermore, and perhaps most importantly, property receipts entered into evidence affirmatively listed Holton's date of birth as being in 1990, which clearly established his age for the purposes of Corrupting Another with Drugs.

{¶ 30} Based on the evidence in the record, we could not find that plain error existed here even if we did find the trial court erred. The trial court's questioning merely clarified what was already in the record in multiple other places. Moreover, defense counsel's strategy was not to challenge the age of Holton or Leeper, particularly given that even at 18 Holton would have been more than 2 years older than Leeper; rather, Holton's strategy appeared to be to paint Leeper as the sole culprit of the drug transaction. For all of these reasons we cannot find that plain error exists in this case. Therefore, Holton's second assignment of error is overruled.

*State v. Holton*, 2017 WL 3129395, at *4-5.

Similarly, in claim four, Petitioner asserts, *inter alia*, that he was denied a fair trial because the trial court failed to issue jury instructions on the accomplice testimony. The

appellate court likewise reviewed this claim for plain error only, due to Petitioner's failure to object:

{¶ 38} Holton first argues that R.C. 2923.03(D) required the trial court to include a jury instruction if an accomplice testified at trial against Holton. Revised Code 2923.03(D) reads as follows.

(D) If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:

"The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.

{¶ 39} In this case it is undisputed that an instruction pursuant to R.C. 2923.03(D) was not given. It is similarly undisputed that Holton did not object to the trial court's failure to provide an instruction pursuant to R.C. 2923.03(D), thus he has waived all but plain error on appeal.

{¶ 40} Courts have held that "despite the mandatory nature of R.C. 2923.03(D), the statute only requires substantial, not strict, compliance." *State v. Woodson*, 10th Dist. Franklin No. 03AP–736, 2004–Ohio–5713, ¶ 17, citing *State v. Christian*, Jefferson App. No. 96–JE–42 (Jan. 13, 2000) ("R.C. 2923.03[D] expressly permits substantial compliance with the accomplice testimony instruction. Therefore, a trial court does not commit error if it does not literally comply with the statute."); *State v. Manley*, 7th Dist. Columbiana No. 95–CO–53, 1997 WL 28543 ("We read [R.C. 2923.03(D)] as not requiring the instruction to be read verbatim * * *").

{¶ 41} In applying this law, Ohio Appellate Courts have generally looked to three factors to determine whether failure to give an accomplice instruction constitutes plain error: "(1) the accomplice's testimony was corroborated by other evidence introduced at trial, (2) the jury was aware from the accomplice's testimony that he benefitted from agreeing to testify against the defendant; and/or (3) the jury was instructed generally regarding its duty to evaluate the credibility of the witnesses."

*State v. Worley*, 8th Dist. Cuyahoga No. 103105, 2017–Ohio–649, ¶ 5, appeal not allowed, 149 Ohio St.3d 1422, 2017–Ohio–4038, ¶ 5 (2017), citing *Woodson* at ¶ 18. Despite there being three factors to consider in evaluating whether failure to give an instruction pursuant to R.C. 2923.03(D) constitutes plain error, "courts have concluded that if the first factor and one other factor are present, the absence of the accomplice instruction will not affect the outcome of the case." *Woodson* at ¶ 18.

{¶ 42} In this case, the jury was instructed generally regarding its duty to evaluate the credibility of witnesses, satisfying the third factor. As to the first factor, Leeper's testimony was also corroborated by Ratliff; however, if Ratliff is also considered an accomplice despite having seemingly nothing personally to do with the drug sale in this instance, Leeper's testimony was still corroborated in part by the testimony of the CI and the surveillance of the officers.

{¶ 43} As to the second factor, Leeper was asked while he was on the stand if he was benefitting from his testimony, and he testified that there were no promises made to him for testifying, and he was not sure if a charge against him in juvenile court was still pending or not. Nevertheless, Leeper testified that when he was interviewed by Detective Joseph about this incident, he was scared that he was going to be in serious trouble. Testimony indicated that Leeper was the one who initially mentioned Holton's name in the interview with Detective Joseph. Leeper also testified that having a drug offense would hurt his ability to be an athlete in school. The jury was thus aware of Leeper's potential motives for fabrication.

{¶ 44} Based on the evidence presented and the general credibility instruction that was given to the jury in this case, we cannot find plain error in this instance for the trial court's failure to give an instruction pursuant to R.C. 2923.03(D). Thus Holton's argument on this issue is not well-taken.

*State v. Holton*, 2017 WL 3129395, at *6-8.

Petitioner has thereby procedurally defaulted both of these claims for review in these proceedings. *See Norton v. Sloan*, No. 1:16-cv-854, 2017 WL 525561, at *12 (N.D. Ohio Feb. 9, 2017) (citing *Durr v. McLaren*, No. 15-1346, 2015 WL 5101751, at *2 (6th Cir. Aug. 28, 2015)). The United States Court of Appeals for the Sixth Circuit has held that Ohio's contemporaneous-objection rule constitutes an adequate and independent state ground to preclude federal habeas review. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334-35 (6th Cir.) (citation omitted), *cert. denied sub nom. Wogenstahl v. Robinson*, 568 U.S. 902 (2012); *Awkal v. Mitchell*, 613 F.3d 629, 648-49 (6th Cir. 2010), *cert. denied*, 562 U.S. 1183 (2011). The state appellate court's plain error

review does not constitute a waiver of the state's procedural default rules. *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006), *cert. denied sub nom. Keith v. Houk*, 549 U.S. 1308 (2007).

Petitioner waived all of his remaining claims for relief by failing to raise them on appeal to the Ohio Supreme Court, where he argued solely that the appellate court had abused its discretion in denying a motion to supplement the record, and that the trial court committed plain error by failing to issue a jury instruction on the testimony of the accomplice, Tyrese Leeper. (See ECF No. 7, PAGEID # 201.) Further, Petitioner may now no longer these claims to the Ohio Supreme Court. He thereby has procedurally defaulted all of his remaining claims for relief. *See Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (procedural default occurs when the petitioner fails to raise a claim in the Ohio Supreme Court); *Schwarzman v. Miller*, No. 1:15-cv-885, 2016 WL 11259030, at *8 (N.D. Ohio Sept. 13, 2016) (same)).

Petitioner may still secure review of his claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). It is Petitioner's burden to show cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v.*

*Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to establish any cause for his procedural defaults.

The United States Supreme Court has also held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition. *Id.* at 317. However, a claim of actual innocence is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id.* at 315 (quoting *Herrera*, 506 U.S. at 404). The actual innocence exception to procedural default allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence—i.e., evidence not previously presented at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). Review of the record fails to establish that Petitioner can meet this standard here.

## IV. Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
Chief United States Magistrate Judge